# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | 1:17CR147 |
| | ) | |
| | ) | |
| ROBERT HOSMER RISLEY | ) | |

**MEMORANDUM OPINION AND ORDER**

A grand jury for this District indicted the defendant for receiving child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A), and transporting child pornography, in violation of 18 U.S.C. § 2252A(a)(1). (Docket Entry 1.) The case thereafter came before the Court for a hearing on an oral motion for detention by the United States, pursuant to 18 U.S.C. § 3142(f)(1)(A),[1] after which the Court took the matter under advisement. (See Docket Entry dated May 5, 2017.) The Court now enters this written order of detention (as required by 18 U.S.C. § 3142(i)(1)), because clear and convincing evidence establishes that no available release conditions reasonably could assure the safety of the community.

BACKGROUND

A United States Probation Officer prepared a report regarding the defendant's history, residence, family ties, employment,

---

[1] Because they fall within Chapter 110 of Title 18, the offenses charged in this case (both of which carry potential punishments in excess of one year in prison, see 18 U.S.C. § 2252A(b)(1)) constitute crimes of violence for purposes of Section 3142(f)(1)(A). See 18 U.S.C. § 3156(a)(4)(C).

financial resources, health (including as to mental health and substance abuse issues), and prior record.  Both parties had an opportunity to review that report before the detention hearing. The defendant conceded the accuracy of the factual information in the report, with minor clarifications regarding his military and employment history and his answer regarding mental health treatment,[2] and was "afforded an opportunity to testify, to present witnesses, to cross-examine witnesses who appear[ed] at the hearing, and to present information by proffer or otherwise," 18 U.S.C. § 3142(f).  In that regard, the defendant (through counsel) presented copies of his release order from state court on related charges, as well as medical appointment information, proffered a release plan, and cross-examined the law enforcement officer called by the United States.

## DISCUSSION

Given the nature of the charges in this case, "[s]ubject to rebuttal by the [defendant], it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of the community," 18 U.S.C. § 3142(e)(3).[3]  "[T]he presumption operate[s] at a

---

[2] Specifically, the defendant clarified that he had declined to discuss whether he received mental health treatment, rather than affirmatively stating that he had not received such treatment.

[3] A federal grand jury indicted the defendant for violating 18 U.S.C. § 2252A(a)(1) and (2)(A).  (See Docket Entry 1.)  A finding of probable cause to believe a defendant committed either such offense triggers the cited presumption of detention.  See 18
(continued...)

minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." United States v. Alatishe, 768 F.2d 364, 371 (D.C. Cir. 1985) (emphasis omitted).[4]

"Even when a defendant satisfies his burden of production, however, 'the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court.' The presumption remains as a factor because it is not simply an evidentiary tool designed for the

---

[3](...continued)
U.S.C. § 3142(e)(3)(E) (indicating presumption applies to "an offense involving a minor victim under section . . . 2252A(a)(1)[ and] 2252A(a)(2)"). "[T]he appeals courts that have addressed this issue have uniformly concluded that the judicial officer may rely on a grand jury indictment to establish probable cause for the purpose of triggering the rebuttable presumptions in section 3142(e)." United States v. Vargas, 804 F.2d 157, 163 (1st Cir. 1986) (citing and joining position of United States Courts of Appeals for the Second, Sixth, Seventh, and Eleventh Circuits); accord United States v. Smith, 79 F.3d 1208, 1210 (D.C. Cir. 1996); United States v. Suppa, 799 F.2d 115, 119 (3d Cir. 1986). District courts in this Circuit uniformly follow the same rule. See, e.g., United States v. Glover, No. 5:10-cr-258-F-5, 2010 WL 3245526, at *1 (E.D.N.C. Aug. 17, 2010); United States v. Boyd, 484 F. Supp. 2d 486, 488 (E.D. Va. 2007). Moreover, as detailed below, the evidence at the hearing confirmed the existence of probable cause.

[4] Numerous courts have held that "section 3142(e)(3)'s presumption in favor of detention imposes only a 'burden of production' on the defendant." United States v. Stone, 608 F.3d 939, 945 (6th Cir. 2010) (citing as examples decisions from the Second and Seventh Circuits); accord United States v. Hir, 517 F.3d 1081, 1086 (9th Cir. 2008); United States v. Abad, 350 F.3d 793, 797 (8th Cir. 2003); United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991); United States v. Stricklin, 932 F.2d 1353, 1354-55 (10th Cir. 1991); United States v. Quartermaine, 913 F.2d 910, 916 (11th Cir. 1990); United States v. Hare, 873 F.2d 796, 798 (5th Cir. 1989); United States v. Carbone, 793 F.2d 559, 560 (3d Cir. 1986); United States v. Hill, No. 1:06cr82-1, 2007 WL 547611, at *1 (N.D. W. Va. Feb. 16, 2007).

courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." United States v. Stone, 608 F.3d 939, 945 (6th Cir. 2010) (citation omitted) (quoting United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001)); accord United States v. Hir, 517 F.3d 1081, 1086 (9th Cir. 2008); United States v. Abad, 350 F.3d 793, 797 (8th Cir. 2003); United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991); United States v. Stricklin, 932 F.2d 1353, 1355 (10th Cir. 1991); United States v. Hare, 873 F.2d 796, 798-99 (5th Cir. 1989); United States v. Dominguez, 783 F.2d 702, 707 (7th Cir. 1986); United States v. Medina, 775 F.2d 1398, 1402 (11th Cir. 1985).[5]

In resolving the issue of release or detention, the Court has considered, along with the statutory presumption, the following statutorily prescribed factors: "(1) the nature and circumstances of the offense[s] charged, including whether the offense[s are] crime[s] of violence . . . or involve[] a minor victim. . .; (2) the weight of the evidence against the [defendant]; (3) the history and characteristics of the [defendant] . . .; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release."  18 U.S.C

---

[5] Courts in this Circuit also have taken that position. See, e.g., United States v. Jinwright, No. 3:09cr67, 2010 WL 2926084, at *1 (W.D.N.C. July 23, 2010); United States v. Moore, No. 2:09cr222-41, 2010 WL 1006205, at *2 (S.D. W. Va. Mar. 16, 2010); Hill, 2007 WL 547611, at *1.

§ 3142(g). Based on the record before it, the Court makes the following findings of fact and/or conclusions of law:

1) as reflected by the above-discussed presumption of detention, the applicable penalties, and the language of the Bail Reform Act, the offenses charged against the defendant are serious in nature and involved circumstances (detailed below) that endangered the community, see, e.g., United States v. Morace, 594 F.3d 340, 350 (4th Cir. 2010) (observing that Congress has made clear its "view that child pornography crimes are serious offenses" (internal quotation marks and brackets omitted)); United States v. Goff, 501 F.3d 250, 258-59 (3d Cir. 2007) (explaining that "[c]hildren are exploited, molested, and raped" and thus suffer "injuries and the taking of their innocence" due to the market for child pornography, and rejecting effort "to downplay the nature and seriousness of [child pornography offense] . . . [by] implying that [it] was a victimless crime because viewing the pornography was 'a solitary, private activity of short duration driven by [offender's] curiosity'"); United States v. Melquizo, 824 F.2d 370, 371 (5th Cir. 1987) ("We find that a possible sentence of ten years is also sufficient indication that the offense is serious."); United States v. Church, 701 F. Supp. 2d 814, 820-22 (W.D. Va. 2010) (cataloging grievous harms caused by child pornography offenses); 18 U.S.C. § 2252A(b)(1) (imposing minimum sentence of five years' imprisonment and maximum sentence of twenty years' imprisonment for violations of Section 2252A(a)(1) or (2)), 3142(g)(1) (identifying

issue of "whether the offense is a crime of violence . . . or involves a minor victim" as significant to assessment of risks relevant to detention decision), 3156(a)(4)(C) (defining "'crime of violence'" as used in Section 3142 as including offenses under Section 2252A(a)(1) and (2));

2) the weight of the evidence against the defendant appears very strong in that:

    A) law enforcement officers received a report from the National Center for Missing and Exploited Children that an individual uploaded child pornography to (i) Chatstep, an online messaging system, using the username "Grandpa," as well as (ii) Skype, an online messaging and videoconferencing system, using the "bill.bill604" username;

    B) follow-up investigation revealed that the Internet Protocol ("IP") address[6] used by that individual was assigned to the defendant;

    C) on August 24, 2016, law enforcement officers conducted a knock and talk at the defendant's residence, during which he admitted to possessing child pornography and owning the "bill.bill604" account;

    D) the defendant consented to a search of the computers in the residence, which search revealed child pornography on his laptop, prompting officers to seize the laptop; and

---

[6] An IP address is an "identification number[] assigned to every device connected to the Internet." First Time Videos, LLC v. Does 1-500, 276 F.R.D. 241, 245 (N.D. Ill. 2011).

E) subsequent examination of the laptop revealed 320 images and 14 videos of child pornography, as well as numerous Skype chats (copies of some of which the United States introduced at the detention hearing) in which the defendant, using variations of his "bill.bill" Skype handle (e.g., "bill.bill6969"), discussed his involvement with child pornography; and

3) the history and characteristics of the defendant raise the following concerns regarding danger to the community his release would present:

A) in addition to evidence of the defendant's participation in the exchange of child pornography, the chats recovered from his laptop revealed his (i) strong interest in committing child sexual abuse, (ii) reports of past sexual activity with prepubescent and adolescent boys (including meeting a 16-year-old boy over the Internet, traveling to the boy's home, and engaging in sexual relations with the boy), and (iii) admission of ongoing molestation of a five-year-old male relative, dating back four years;[7] and

---

[7] In one chat, the defendant indicated a willingness to show the five-year-old boy on camera if the other party to the chat displayed his genitalia. In another chat, the defendant asked the other party "would you like to see my [young male relative] naked?" After the other party expressed concern about hearing the boy in the background, the defendant stated: "we like what we like....we should not apologize for that." The other party responded: "yeah but he's ur family not meat[.]" The defendant then explained: "I don't look at him as meat. I only want him to enjoy the pleasures of his body[.]" Later in the chat, the defendant remarked: "loving [kids] like we do is not perverted[.]" Moreover, the defendant evidently has had regular contact with a five-year-old
(continued...)

B) examination of the laptop also revealed a Skype videoconference initiated by the defendant with a (self-identified) fifteen-year-old boy, in which the defendant (i) enticed the boy into showing his genitalia and masturbating before the camera, and (ii) expressed a desire to perform sex acts on/with the boy.

Assuming the defendant has rebutted the statutory presumption of detention, the Court nonetheless finds, by clear and convincing evidence, that the defendant's release would present a risk of danger to the community that available release conditions would not reasonably address. In that regard, the evidence reflects that the defendant has long harbored an extreme sexual interest in infant males, young boys, and adolescent males, has reported sexual activity with infant males, young boys, and adolescent males, has denied the wrongfulness of sexual activity between adults and infant males, young boys, and adolescent males, and has solicited child pornography and live pornographic displays by self-identified children. "These circumstances indicate a level of activity well beyond that of a mere observer. [The d]efendant was a purveyor in the marketplace for child pornography and interested in contacting children." United States v. Blankenship, Crim. No. 1:08-73, 2008 WL 1925137, at *4 (S.D. W. Va. Apr. 29, 2008) (ordering detention).

---

[7](...continued)
male relative, but told officers that his comments about molesting the boy represented only "fantasy." The evidence before the Court did not reflect that the defendant offered similar explanations for his reports of other past sexual contact with children.

The Court further concludes that the defendant's proposed release plan fails to adequately offset the risk of danger. "The defense offers to place [the d]efendant in [the] house [he shares with his wife], the same [living arrangement as] when []he committed the crimes alleged . . . . It therefore seems unlikely that [the d]efendant's [wife], or any third party for that matter, can effectively supervise h[im]. Put simply, [the d]efendant's conduct is too dangerous to be managed through a supervision program." United States v. Wilson, 217 F. Supp. 3d 165, ___, 2016 WL 6683268, at *7 (D.D.C. Nov. 14, 2016); see also id. at ___, 2016 WL 6683268, at *7 n.5 (observing that, regardless of conditions, the charged defendant "would likely still find a way to access the Internet"); United States v. Hurwitz, CR 116-78, 2016 WL 5952744, at *3 (S.D. Ga. Oct. 13, 2016) ("While no evidence was introduced of past criminal convictions, evidence was introduced that [the charged d]efendant's conduct was not an isolated event. . . . [He] is capable of engaging in the same or similar conduct from nearly any internet-enabled device and it would be nearly impossible to prevent [his] unmonitored access to such outlets in an age of ubiquitous internet access and inexpensive computing technology."); United States v. Davin, No. 12-10141-EFM, 2012 WL 2359419, at *3 (D. Kan. June 20, 2012) (citing child pornography defendant's "ability to hide his behavior from family members in the past," in reversing release order); Blankenship, 2008 WL 1925137, at *5 ("The [c]ourt does not regard [the charged d]efendant's performance on

State bond as any indication that he will abide by the terms and conditions of this [c]ourt's bond if released.  First, the [c]ourt does not know . . . how active the State Probation Officer was in administering [the charged d]efendant's release while criminal proceedings were pending there.").

**IT IS THEREFORE ORDERED** that the oral Motion for Detention by the United States is **GRANTED** and the defendant shall be detained pending disposition of the instant charges pursuant to 18 U.S.C. § 3142(e)(1).  The defendant is committed to the custody of the United States Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or held in custody pending appeal.  The defendant shall have a reasonable opportunity for private consultation with defense counsel.  On order of a United States court or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver the defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

May 31, 2017